672 F.2d 1305
 Sander Michael HALET, by his father, next of friend and
guardian ad litem Robert Michael Halet, Robert Michael
Halet, on behalf of themselves and all other persons
similarly situated, and the Children Project, a Church of
Life Program, an unincorporated non-profit organization,
Plaintiffs-Appellants,
v.
WEND INVESTMENT CO., et al., Los Angeles County, Defendants-Appellees.
 Nos. 80-5329, 80-5556.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1981.
Decided Jan. 25, 1982.
As Amended March 26, 1982.
 
 Marshall A. Lerner, Los Angeles, Cal., for plaintiffs-appellants.
 Mary F. Wawro, Bruce Warner, Schwartz, Alschuler & Grossman, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before CHOY and ANDERSON, Circuit Judges, and KEEP,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 Robert Halet applied for an apartment in a complex owned by the Wend Investment Company in Marina del Rey. His application was denied because Wend had an adults-only rental policy and Halet had a child in his household. Halet brought this suit against Wend and Los Angeles County, which leases the land to Wend, charging that the adults-only rental policy violated his right to live with his family and was racially discriminatory.[1] Specifically, he claimed that the County and Wend violated the fourteenth amendment, Civil Rights statutes, 42 U.S.C. §§ 1981, 1982, 1983, and 2000d, and the Fair Housing Act, 42 U.S.C. § 3604. He sought a declaratory judgment that the rental policy was unlawful and an injunction prohibiting such a policy.
 
 
 2
 The district court dismissed Wend on the grounds that the case was moot and that Halet failed to state a claim upon which relief could be granted. The district court dismissed the County of Los Angeles on the grounds that there was no invidious discrimination and that the complaint failed to allege sufficient facts to show state action. Finally, the district court denied Halet's request for attorney's fees.
 
 
 3
 * Mootness
 
 
 4
 After Halet filed his complaint, the City of Los Angeles adopted an ordinance prohibiting adults-only rental policies. Wend then announced a new policy under which it would rent to households with minor children. Although the complex that is the subject of this suit is not located in the city of Los Angeles, Wend has a complex in the city and stated that it wanted to maintain a uniform policy for all of its complexes.
 
 
 5
 The voluntary cessation of allegedly illegal conduct does not ordinarily make a case moot. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968); TRW, Inc. v. FTC, 647 F.2d 942, 953 (9th Cir. 1981). Such circumstances may make a case moot, however, if it is absolutely clear that: (1) there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely eradicated the effects of the violation. County of Los Angeles, 440 U.S. at 631, 99 S.Ct. at 1383; Lodge 1380, Brotherhood of Railway Clerks, etc. v. Dennis, 625 F.2d 819, 822 (9th Cir. 1980). The defendant bears a heavy burden to demonstrate mootness. County of Los Angeles, 440 U.S. at 631, 99 S.Ct. at 1383; Concentrated Phosphate, 393 U.S. at 203, 89 S.Ct. at 364; TRW, Inc., 647 F.2d at 953. But see Halvonik v. Reagan, 457 F.2d 311, 313 (9th Cir. 1972). A promise to refrain from future violations likewise is not sufficient to establish mootness. United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). In Grant, the government sued three corporations and an individual who was director of all three for violations of the Clayton Act. The individual resigned and the companies told the Court that they had no intention to revive the interlocks. The Court held, however, that because the companies were free to return to their old ways and because of the public interest in having the legality of the practice settled, the case was not moot. 345 U.S. at 632, 73 S.Ct. at 897. Further, it held that the defendants' representations of intent were not sufficient to moot the case. Id. at 633, 73 S.Ct. at 897.
 
 
 6
 Similarly, in Concentrated Phosphate a new regulation made it uneconomical for the defendants to continue their alleged violations for which they had formed an association. They disbanded and said they would not engage in future joint operations. The Court held that such a statement standing alone "cannot suffice to satisfy the heavy burden of persuasion" resting on those claiming mootness. Concentrated Phosphate, 393 U.S. at 203, 89 S.Ct. at 364.
 
 
 7
 This court cannot rely on Wend's statement alone. Wend could revert to an adults-only policy in the future, and Wend has not demonstrated that there is no reasonable expectation of such an occurrence. Moreover, it is not clear that Wend's new policy has completely eradicated the effect of Wend's adults-only policy. Accordingly, Wend has not demonstrated that the case is moot.
 
 II
 Standing
 
 8
 The County asserts that Halet, who is white, does not have standing to challenge racial discrimination against Blacks and Hispanics. The district court did not dismiss any claims on this basis, but this court can affirm the dismissal on any ground fairly presented in the record. Shipley v. United States, 608 F.2d 770, 773-74 (9th Cir. 1979).
 
 
 9
 The standing requirements of Article III are only that the party be injured by the challenged conduct. However, the Supreme Court has further limited standing, as a prudential matter, requiring that a party assert its own rights and interests not those of third parties. Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1974). The Court has waived this standing requirement in some discrimination cases where it appears that a white person is the only effective adversary. Sullivan v. Little Hunting Park, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1952). Here, however, Halet is not the only effective adversary; he is in no better position to bring this action than a black person denied an apartment because of minor children.
 
 
 10
 Thus, Halet does not have standing to assert his racial discrimination claims under the fourteenth amendment, or under §§ 1981, 1982, 1983 and 2000d. The dismissal of Halet's claims under §§ 1981, 1982 and 2000d is therefore not erroneous because §§ 1981 and 1982 are limited to the protection against racial discrimination. See Patterson v. American Tobacco Co., 535 F.2d 257, 270 (4th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976) (§ 1981). Also § 2000d is limited by its terms to types of discrimination not present in this case.[2]
 
 
 11
 Halet does, however, have standing to raise a racial discrimination claim under the Fair Housing Act. Congress expanded standing under that Act to the full extent of Article III. The Supreme Court, in Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99-100, 103 n.9, 99 S.Ct. 1601, 1607-08, 1609-10 n.9 (1979), held that a plaintiff who has suffered an actual injury is permitted to prove that the rights of another are infringed.[3] Here, Halet claims that he was denied an apartment because of a policy that allegedly infringes on the rights of Blacks and Hispanics. Under Gladstone this is sufficient to support Halet's standing under the Act.
 
 III
 Failure to State a Claim
 
 12
 Although Halet lacked standing to raise racial discrimination claims under § 1983 and the fourteenth amendment, he clearly has standing to challenge the adults-only policy under § 1983 and the fourteenth amendment on the grounds that it violates his right to raise a family and discriminates against families with children. We must now proceed to consider whether the district court's dismissal of Wend for failure to state a claim, and its dismissal of Los Angeles County on the grounds that the complaint was insufficient to show state action and that there was no invidious discrimination, were correct.
 
 
 13
 A dismissal for failure to state a claim upon which relief can be granted is a ruling on a question of law and as such is freely reviewable by this court. Alonzo v. ACF Property Management, Inc., 643 F.2d 578, 579 (9th Cir. 1981). Such a dismissal cannot be upheld unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved. Beneficial Life Insurance Co. v. Knobelauch, 653 F.2d 393, 395 (9th Cir. 1981). On a motion to dismiss, the court presumes that the facts alleged by the plaintiff are true. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834 (9th Cir. 1980).
 
 A. Family Rights
 
 14
 "Freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." Moore v. City of East Cleveland, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977) (quoting Cleveland Board of Education v. Lafleur, 414 U.S. 632, 639-40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974)). Halet contends that the adults-only policy infringed this due process right and discriminated against families with children in violation of the equal protection clause.
 
 1. State Action
 
 15
 To maintain an action under the fourteenth amendment or § 1983, Halet must show state involvement. The under-color-of-state-law requirement of § 1983 is equivalent to the state action requirement of the fourteenth amendment. Arnold v. IBM Corp., 637 F.2d 1350, 1355 n.2 (9th Cir. 1981).
 
 
 16
 Halet's complaint alleged that the County leased the land to Wend. In Halet's opposition to the motion to dismiss he offered to amend his complaint to allege additional facts regarding state action. He again offered to amend his complaint at the hearing on the motion to dismiss. Nevertheless, the complaint was dismissed without leave to amend.[4]
 
 
 17
 A denial of leave to amend is within the discretion of the district court and will be reversed if the district court abused its discretion. Waits v. Weller, 653 F.2d 1288, 1290 (9th Cir. 1981). The facts regarding state action provided by Halet in his opposition to the motion to dismiss in the district court and in his brief in this court, if true, establish state action. The district court abused its discretion in dismissing without leave to amend,[5] see Scott v. Eversole Mortuary, 522 F.2d 1110, 1116 (9th Cir. 1975), and a dismissal for lack of state action in light of these facts is erroneous.
 
 
 18
 In his opposition and in his brief, Halet alleges that: (1) the County owns the land leased to Wend for the apartment complex; (2) the County acquired and prepared the land using federal and state funds and used federal services in dredging the harbor in the redevelopment area; (3) the purchase of land was part of a large redevelopment program; (4) the County leased the land to Wend for the benefit of the public in providing housing; (5) the lease prohibits race or religious discrimination; (6) the County oversees the development of the area and the design of the buildings and had final approval of all plans; (7) the County controls the use and purpose of the apartment and the rent charged; (8) Wend pays a percentage of the rentals to the County; and (9) Wend must abide by all the conditions of the lease.
 
 
 19
 These allegations, if proved, would place the County in a position of interdependence such that it is a joint participant with Wend. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (city leased space in garage to restaurant, costs of acquisition and construction defrayed by city, benefit to city of proceeds in exchange for tax benefit to restaurant, city could have required non-discrimination); Geneva Towers Tenants Organization v. Federal Mortgage Investors, 504 F.2d 483 (9th Cir. 1974); Male v. Crossroads Ass'n., 469 F.2d 616 (2d Cir. 1972); Smith v. Holiday Inns of America, 336 F.2d 630 (6th Cir. 1964). Thus, there are sufficient allegations of state action to require reversal of the district court's dismissal of the County as a defendant and to permit Halet's claims under the fourteenth amendment.
 
 2. Infringement of Rights
 
 20
 The district court also explained its dismissal of the County saying that children are not an "insular minority," see United States v. Carolene Products Co., 304 U.S. 144, 152-53 n.4, 58 S.Ct. 778, 783-84 n.4, 82 L.Ed. 1234 (1938), and that the policy therefore withstood the lesser degree of scrutiny required in equal protection claims when no suspect class is involved. Strict scrutiny is required, however, when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. Tsosie v. Califano, 630 F.2d 1328, 1337 (9th Cir. 1980) (quoting Massachussetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)), cert. denied, 451 U.S. 940, 101 S.Ct. 2022, 68 L.Ed.2d 328 (1981). A fundamental right may also require strict scrutiny under the due process clause. See Moore v. City of East Cleveland, 431 U.S. 494, 498-99, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1976) (plurality opinion); Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 137 (1973).
 
 
 21
 Family life, in particular the right of family members to live together, is part of the fundamental right of privacy. Moore, 431 U.S. at 498-99, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (plurality opinion) cited with approval in Zablocki v. Redhail, 434 U.S. 375 at 385, 98 S.Ct. 673 at 680, 54 L.Ed.2d 618. The plurality opinion in Moore stated that "when the government intrudes on choices concerning family living arrangements, this court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." Moore, 431 U.S. at 499, 97 S.Ct. at 1935. The ordinance in Moore prohibited a household from including certain extended family members. The policy in this case prohibits a household from including immediate family members-that is children. A fundamental right is even more clearly involved here because the rental policy infringes the choice of parents to live with their children rather than the choice of more distant relations. Moore, 431 U.S. at 500, 97 S.Ct. at 1936 (plurality opinion), 431 U.S. at 536, 97 S.Ct. at 1954 (Stewart dissenting); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A fundamental right to be free from state intrusion in decisions concerning family relationships in the nuclear family has been clearly recognized. Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 145 (1944), cited in Zablocki, 434 U.S. at 384-86, 98 S.Ct. at 679-81; Stanley, 405 U.S. at 651, 92 S.Ct. at 1212.
 
 
 22
 Not every state action that infringes upon a fundamental right triggers strict scrutiny. See Tsosie, 630 F.2d at 1337; Socialist Workers Party v. March Fong Eu, 591 F.2d 1252, 1260 (9th Cir. 1978), cert. denied, 441 U.S. 946, 99 S.Ct. 2167, 60 L.Ed.2d 1049 (1979). Because the state action in this case infringes upon a fundamental right, we must reverse the district court's dismissal of Halet's due process and equal protection claims to enable it to consider whether, under the recently-decided Hawaii Boating Ass'n v. Water Transportation Facilities Division, 651 F.2d 661 (9th Cir. 1981), a "genuinely significant deprivation" of a fundamental right has occurred. Id. at 664-65. If such a deprivation has occurred, then the court must determine whether the adults-only policy can survive strict scrutiny.
 
 B. Fair Housing Act
 
 23
 Significant discriminatory effects flowing from rental decisions may be sufficient to demonstrate a violation of the Fair Housing Act. See United States v. Mitchell, 580 F.2d 789, 791 (5th Cir. 1978); Resident Advisory Board v. Rizzo, 564 F.2d 126, 146-48 (3d Cir. 1977); Metropolitan Housing Development Co. v. Village of Arlington Heights, 558 F.2d 1283, 1289-90 (7th Cir. 1977) (on remand); Smith v. Anchor Building Corp., 536 F.2d 231, 233 (8th Cir. 1976). As these cases show, the circuits have applied different standards in determining how important a discriminatory effect is in proving a Fair Housing Act violation. We prefer to address the issue of which standard should apply when it is presented in the context of a fully-developed record.
 
 
 24
 The documents attached to the complaint seem to show some possibility of discriminatory effect.[6] Halet has made sufficient allegations to state a cause of action under the Act.
 
 CONCLUSION
 
 25
 We affirm the dismissal of Halet's claim of race discrimination under the fourteenth amendment, 42 U.S.C. §§ 1981, 1982, 1983, and 2000d. We reverse and remand Halet's claim under the fourteenth amendment and 42 U.S.C. § 1983 of a denial of his right to live together with immediate family members, and his race discrimination claim under 42 U.S.C. § 3604. Because the case is remanded, the issue of attorney's fees for Halet's district court work is premature. The parties shall bear their own costs on this appeal.
 
 
 26
 KEEP, District Judge, concurs in the result.
 
 
 
 *
 The Honorable Judith N. Keep, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Halet's claims of racial discrimination are based on the greater effect that an adults-only policy has on Blacks and Hispanics because more of those households include minor children
 
 
 [2]
 These claims are not saved by the fact that Halet filed a class action. Prior to class certification, the named plaintiffs must have standing to raise race discrimination claims before they can assert them on behalf of a class. O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); see East Texas Motor Freight v. Rodriguez, 431 U.S. 395, 403-06, 97 S.Ct. 1891, 1896-98, 52 L.Ed.2d 453 (1977). This is true even if they have standing on other claims. Payne v. Travenol Laboratories, Inc., 565 F.2d 895, 898 (5th Cir.), cert. denied, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). Cf. Harris v. White, 479 F.Supp. 996, 1009 (D.Mass.1979) (if named plaintiff has standing to raise one substantial claim, he may seek class-wide relief on claims on which he has no standing)
 
 
 [3]
 This extended to suits brought under 42 U.S.C. § 3612, such as this one, the standing rule the Court had previously held applicable to suits brought under 42 U.S.C. § 3610, in Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). Gladstone, 441 U.S. at 96-97, 99 S.Ct. at 1606-07
 
 
 [4]
 Wend contends that the dismissal constituted summary judgment. It is, however, apparent from the district court's orders that its dismissal for failure to state a claim was not a summary judgment
 
 
 [5]
 Further, because neither Wend nor the County had filed a responsive pleading, Halet had the right to amend his complaint as a matter of course. Nolen v. Fitzharris, 450 F.2d 958, 958-59 (9th Cir. 1971)
 
 
 [6]
 Halet provided a table showing the percentage of Blacks, Hispanics, whites, female-headed households with children. For example, the table shows, that in Los Angeles, 38% of white households, 62% of black households, and 69% of Hispanic households have children